May it please the Court, Edward Himmelfarb with the Department of Justice representing the United States. This is a medical malpractice action under the Federal Tort Claims Act. What happened to Earl Jr. is a tragedy, but the issue on appeal is not liability, which the government does not contest here. Is there a reason why we shouldn't certify this question to the Florida Supreme Court? Well, yes. The answer is yes. The reason is that this involves a fairly straightforward interpretation of a statute using ordinary principles of statutory interpretation. We have cited U.S. Supreme Court cases and Florida Supreme Court case involving this principle. When you look at two statutes that have similar content side by side and one leaves out a provision, you can infer that the legislature meant to not have that provision and I'm talking about, of course, periodic payment statute. So that's the primary reason. Second thing is, Your Honor, if you look at this Court's decision in Somer v. Johnson, which we cited in our yellow brief, what happened there, that was a diversity case involving Florida medical malpractice. And there were no controlling, no decisions on interpreting the statute by the Florida Supreme Court. There were some intermediate Florida appellate court decisions. And what this Court said in Somer was that the Court would treat those intermediate appellate court decisions as binding on it in the absence of any evidence that the Florida Supreme Court would rule differently. So it's not necessary. This Court obviously has the authority to do that. I don't think it's necessary. Except that, and I understand the Florida court opinion with respect to the other missing provision. Correct, yeah. That's an important opinion. I understand. However, there is no Florida court opinion on this specific provision, right? That's correct, Your Honor. But at the same time, the principle that that case articulated certainly would apply to the portion of the periodic payment statute that is relevant here. Well, wouldn't you agree that these rules of statutory construction are really more guideposts than dictate a particular result? And do you think it would be fair to interpret the omission of the relevant provision as leaving the issue of the reversion and the discretion of the trial court judge? No, actually, Your Honor, I think the way you need to look at this, to answer the first part of your question, yes, they are general guidelines. Yes, we certainly agree with that. They're general guidelines. But I think in this case, what the court really needs to do is to take the two provisions, 768.78 1B and 2B next to each other. 1B has five sentences in there. Now, if you go through sentence by sentence, you can see what was deliberately, in our view, deliberately left out of 2B, which applies to medical. But what is the significance of the fact that it was deliberately left out? Your position is, well, deliberately left out excludes all other possibilities but one, but isn't there another possibility that the intent was to leave it up to the trial court judge? Well, I think, Your Honor, I think what the only, if our view is not accepted, the only alternative seems to me to be to apply the provision in 1B to 2B, which I don't think works very well. And 1B, if you did that, in any event, if we were required to stop periodic payments if Earl Jr. doesn't reach the age of 30, if we're required to, if the trust stops the periodic payments and then pays the balance of the judgment reduced to present value in a lump sum, then there's still going to be a balance in the trust the way this has to be set up because we're approximating the Florida remedy. This is not exactly directly applied to the United States. So the United States has to put up a lot of money at the outset to be paid out periodically. And there's going to be a balance in there. If you look at point 1C of our opening brief, you'll see we kind of gave an example of how that works. But there's going to be the difference between the reduction period to present value and the actual full amount, and there's going to be interest that's been earned on this. And so between the two, there's going to be, even if you accept the plaintiff's view of this and you apply the non-medical provision to the medical defendants, you're still going to have a balance in the trust. But doesn't it seem strange that there are no, I mean, this provision's now been around for some time, and there are a lot of medical malpractice cases in Florida, and we don't have a single case to go on. And here's the thing about it, with respect to the other Florida case about the provision about miscarriage of justice, that seems like a very different kind of provision than stopping the payment or versionary interest in the case of the United States. Because in the first provision, the miscarriage of justice, it's a question of whether periodic payments can be made at all versus a lump sum. But either way, you're going to be paying the same amount, whether periodic payments are allowed to be made or they're not allowed to be made. You're still going to be paying the same amount. One will be reduced to present value, and the other will be periodic payments, but you're going to pay the same amount. In the way you are asking us to construe the provision at issue here, you would not pay the same amount, and it's a one-way ratchet, right? It's like, if it turns out that the person dies before predicted, then the defendant gets the benefit. But if it turns out that the person outlives the predicted period, the plaintiff does not get the benefit. And it seems like a very huge leap to take when there's no case at all from Florida courts of any type that suggests that this has ever even been an issue. I mean, that's like a dramatic departure from the way to read the statute. Well, Your Honor, I mean, if you look at the entire background of the statute, it's obviously done to help medical negligence defendants. There's no question about that. Well, it doesn't help them very much because it actually adds a lot of burdens. It adds complication. I wouldn't say burdens, it adds complications because the two amounts... Well, I think that the appellant makes the point that it's, I'm sorry, the appellee makes the point that it's so burdensome, nobody would ever take advantage of it. You don't get the reduction to present value, you have to post a bond for the full amount. It's as though the legislature threw a bone to the medical malpractice tort reform lobby. Well, Your Honor, if I may respond to that. First thing is, we don't know why, we don't have any hard data on why there are no cases on this after 30 years. We just don't know. And that is really speculation. I'll just tell you, it doesn't make much sense to me for the following reason. The idea of reducing something to present value is to make it equivalent to the stream of future payments. So the fact that, in this case, the figure I think was $13 million we would pay if we pay reduced to present value in a lump sum, and we pay $20 million into the trust. Those are basically equivalent economically because the $20 million would be paid out over time. Now, certainly it would be true of a private individual who was paying $20 million over a period of time. The thing is that, I'm sorry, I had another point there. It's all complicated because the government has to pay it at one time. That's right. Well, the government has to pay up front. That's what complicates the problem. That's a complication, yeah. And I think the idea of this whole statute. I'm concerned about this. I was going to go back for, I'm sorry, I remember the point. At common law, you would pay by lump sum, you would estimate future damages, and you would reduce them to present value probably. And as we cited in our brief, we cited the Metropolitan-Stevador case in the Supreme Court, and they talked about this problem at common law. So the jury has to predict the future damages. It has to predict the discount rate based on testimony. And it could get it wrong also. The plaintiff in a common law case is going to have the same risk of not having enough money. So that doesn't change under periodic payments. What changes is that there's a benefit given to the defendant. That's deliberate in our view. That's deliberate to give a benefit to medical negligence defendants. The whole point of the statute is to give a benefit to medical negligence defendants. Except that the benefit that's given is the idea that if you can't really pay the whole thing up front, you can break it out over a period so you don't have to scramble to find liquidity and pay it all in a lump sum. But the other thing, if you allow me to do speculation like the plaintiffs, the speculation I would say is probably the reason you don't have a lot of decisions on this is that nobody is going to invoke periodic payments unless there's a risk or unless there's a huge judgment. And if you're a medical negligence defendant and there's a risk of a huge judgment, you're probably going to settle the case. Now, I admit this is a little bit of speculation on our part. As I said, there's no hard data about this. But these cases are going to settle in our view. So that's why you're not finding a lot of cases on this. And I think... Well, we're not finding any cases on it. That's correct. But if you go back to the Psychiatric Institute of Delray case, the one that has to do with manifest injustice, the whole concept is our legislature, Florida legislature passed this first provision in 86. It changed things in 88 to apply specifically to medical negligence defendants. And that was... You have to... As a judge, you have to interpret that as significant, legally significant, that there's a change meant to protect these medical negligence defendants. If a provision is not in 2B, that is in 1B, you don't apply it to medical... That's the principle from that case. And I admit that's all we have. But that's... And it might be right. All I'm saying is that's... That just seems like not very much to hang your hat on. Along with the general principle of statutory interpretation we've talked about. And the concept, the whole concept of medical malpractice reform as your background principle. So I think all of those together would give you enough. Now, if the court decides you want to certify it to the Florida Supreme Court, as I said, we don't think it's necessary, but obviously the court has authority to do that. And if the court does that, we'll obviously try to persuade the Florida Supreme Court. You've saved some rebuttal time. I beg your pardon? You've saved some rebuttal time. We understand your point. We understand your point. Oh, okay. In any event, I do recommend that the court go line by line through the five sentences of 1B and compare them to 2B because there are differences. And there are two provisions in there, one of which is the pay the estate provision we're talking about here, that's not at all in 2B. There are changes in 2B from each of the five sentences. Specific finding of dollar amount is basically the same. The total dollar amount is very similar with modification. The period of time for payments is not in medical negligence provision. The pay the estate provision is not in the medical negligence provision. And finally, the fifth sentence about varying payments, there's a different way of handling it, but they're basically the same. So, it looks like the legislature actually figured out, paid attention to how to modify this for the benefit of medical negligence defendants. You've had some rebuttal time. Thank you very much, Your Honor. Ms. Ross? Thank you, Your Honors. And Lori Ross on behalf of Earl Jr. and his parents. May it please the Court. The only issues on appeal relate to how and when the government has to pay the economic damages. So, here's where the government and I agree. Number one, intermediate courts are binding and in absence of contrary Florida Supreme Court. The problem is, if you look at Carlisle, which is a Florida Supreme Court opinion, that deals with the repeal of a provision being the best indicia that the legislature did not intend for that provision to be incorporated in the statute. So, we have to go, in order to understand where we are now, we have to understand where we've been. In 1976, when the first permanent periodic payment statute was passed, there were two separate provisions. There was a provision for itemization, which was 768.48. It categorized three different types of damages, one being the medical expenses, the second being, and I mean future medical expenses, the second being lost earnings and earning capacity and delay damages, and the third being non-economic damages. There was a separate provision, 768.51, and that statutory provision provided for termination. And it was a very express provision. It provided for termination, it was written into the statute in 1976. This was the legislature's first foray. And it specifically provided, if the claimant awarded damages to be discharged by periodic payments and the claimant dies prior to the termination of the period of years during which such payments are to be made, the liability of the defendants set forth in paragraphs 1A and C, that was the medical expenses, and that future intangibles shall cease and the estate of the claimant shall have no claim for such amounts. So that provision was expressed in 1976. We go to the year 1986 when there is a statutory overhaul. In 1986, the Florida legislature repealed these two statutes. They replaced them by two different statutes, 768.77 and 768.78. 768.77 now changed the type of itemization that was required by Florida courts. And that broke it into non-economic damages and economic damages, future. The future economic damages reduced to present value. Those future economic damages were now, in the event of death, going to be paid to the estate of the plaintiff. That's how the statute stood. But the provision that he's talking about, the original provision which allowed termination or cessation of all payments, that provision was repealed and eliminated. Instead, the legislature flipped it the opposite way. Now the damages were going to be paid, future economics were going to be paid to the estate of the claimant. And it's reduced to present value. That was what the legislative change was. In 1988, the legislature did an add-on to the statute and the add-on is simply silent on what happens upon death. So we have one case that interprets this statute in over 40 years. That's it. And none of the, and the remedy that the government is trying to imply in, which is a forfeiture, a forfeiture is the exact provision which was repealed by the Florida legislature and they're trying to add it in by implication. So I go back to Carlisle where we had a repeal. There was a common law principle of venue. The common law principle said you have to bring an action in a sovereign immunity case, which is federal tort, a state tort claims statute. You had to bring it in the place where the state had its principle place of business. That was the common law principle. The legislature then passed a statute in its original waiver of sovereign immunity and that provision said you bring the cause of action where the cause of action arose. That statute subsequently gets repealed. An action is brought where the cause of action arose and the argument is made that the general waiver of sovereign immunity, which came later, constituted a waiver and implied in the fact that you didn't have to bring the cause of action in the principle place of business. That's a Florida Supreme Court opinion. The Florida Supreme Court says no. Repeal by the legislature is the best indicia of the legislature's rejection of the principle. So the government's argument is we have a termination implicitly by comparing these two statutory provisions as they stand now. But Carlisle says since these are statutes in derogation of common law, they're strictly construed, not broadly construed. So all we've got is silence, which makes the district's court ruling correct. So why shouldn't we certify this to the Florida Supreme Court? Well, here's where, again, where I'm in agreement with my compatriot. I think legally it's an issue of first impression. Both sides agree to that. The problem is practically we both want a resolution as soon as possible and we would both- I understand that, but wouldn't you like a correct resolution? I'm sure that I would get a correct resolution from this court. I ask that if you're going to certify it, it's done as soon as possible so I can move to expedite that appeal. And yes, this is the perfect case where we say there is no case law on the subject. But I do want to point out just a few of the federal court decisions that the government has relied on for forfeiture because as I've pointed out to you, every state case, every federal case interpreting whether or not there is a reversionary interest in the government, there were only three bases for reversion. One- It's expressed in the statute. Right. One is expressed in the statute. Second is inherent authority to protect the minor. We've already done that. We agreed. The parents agreed to put the payments in trust. So that's what was done and they agreed, they of course at the time thought immediate payment because the child needs care, but that hasn't happened. But in any event, they agreed. The money could go in trust. We immediately agreed to that option so the parents aren't in control of the money. The trustee is in control of the money. So the periodic payment statute was applied in this case. The only issue is, is a private tortfeasor entitled to a reversion? The answer is no. And the government can't be in a better position than a private individual. And so the government can't get a reversion that a private tortfeasor can't get. And the only argument that they've made that makes a little bit of sense to me in terms of reading the statute is the issue with regard to interest. Because assume for a second that you paid all 30 years, the money has been invested, the money has been invested, comes to the end of the lifespan. There are cases saying, well, that's not a windfall to the parents because they have the risk of underpayment as well as overpayment. And they're taking that risk. And that was the Nemers case out of the Seventh Circuit that started that. But there are other cases on that. But if you look at the statute as it is now, the way it could be interpreted is if the security provision, if the security provision and the government's payment of all the money up front constituted security, if it put all that money up front and at the conclusion of 30 years and the money has been invested, if there was some kind of a reversion, you could look at the security provision of the statute which says security goes back to the party who paid it, any security remaining. That's, you could look at that as the interest. The problem with that is the government has disclaimed that the security provision is applicable at all and says that they don't have to come up with security and they're really two separate provisions. But as the interest issue goes, I mean, that's an issue that applies only to the government. It doesn't apply to a private party. And so because what we're doing is we're trying to apply a state statute to the government in the way we would apply it to a private party, it seems to me like that is a completely separate kind of issue and we can do what we think is appropriate to make it most similar to a private party. I agree. I agree with that. I am just mentioning that because it was something I thought a lot about in terms of where they're coming from because it was not raised below. In fact, we had five separate pleadings from the government raising future periodic payments and none of them made this statutory analysis. None of them. There were five separate docket entries. So this is really where they fleshed out the arguments on appeal that weren't presented below. But with regard to it being an issue of first impression, there's no question. Here's where I disagree with the government. And that is with regard to the fact of why there are no cases in 40 years. All you have to do is run the numbers, which I did for you. Because if you're a private individual, you have to come up with security of some kind, a bond, or provide adequate assurance to the court. That costs money and you don't just pay the money over time. You also have to come up with the money to pay a bonding company. You're paying interest on the bond. You're coming up with, in the case of a supersedious bond, you come up with 100% plus two years of interest. I mean, that's, so you have to come up with the collateral plus interest plus surety premiums. That's the problem. If you look at, and defense lawyers don't use this provision because they've figured out the numbers are not to their client's benefit. And that's why I ran the numbers for you. So the bottom line on this case is we respectfully request that you affirm the judgment of the district court. If I'm correct on the cross appeal and we're entitled to lump sum, and I've given you all the reasons why, I just wanted to make out one point with regard to the cross appeal. This was certainly an unusual case in which the government raised as its twelfth affirmative defense, twelfth affirmative defense, that payment was contingent on, was always contingent about there being sufficient funds to pay. And that was part of their request for periodic payments. They never said unequivocally, we're going to pay, and they were called on the carpet for it by the trial court about what was happening in the court below. Because we tried to figure out their position at every stage of the proceeding, and it was really like grasping smoke. So in the offense that the court thinks that a lump sum payment is due, it moots those two issues. And the reason why we say it wasn't adequate security was based on the government's position, not based on the full faith and credit of the United States. It was the government's position with regard to whether or not they were going to pay. So for all of the reasons submitted, the trial court got it right, and the judgment should be reaffirmed if the court has no further questions for me. Thank you very much. Just a few quick points. We dealt with the issue of the repeal of the 1976 version in our brief, but just to summarize, that was indeed repealed in 1986. The entire provision in what's now 1B, I'm sorry, 7068-78-1 was applying to all defendants, but that was changed two years later so that that provision applied only to non-medical negligence defendants, and a new provision was set up to apply to medical negligence defendants. But it is curious that it doesn't specify a reversion either to the estate, well, that the estate keeps getting paid or a reversion to the defendants when the original provision before the one that was amended, right, did actually say that. That's correct, Your Honor, but it also was a different scheme. The overall, and the plaintiffs point that out in their brief, that it was a totally different scheme in 1975-76. It was, but it also shows that, obviously, Congress, not Congress, but the legislature knew how to say it reverts to the defendant. That's correct, Your Honor, but it also knew how to say that the provision that applies to non-medical negligence defendants also applies to medical negligence, so we're kind of in equilibrium there. And that's the problem, right? Six of one, half dozen of the other. I mean, it seems like a good candidate for certification. Well, Your Honor, I mean, certainly if the court's inclined not to accept our position, we would not object to it, but more seriously. No, I understand that, Your Honor, but I think that on balance, it seems a lot more likely to us that the change from 86, the change from subsection one to subsection two is more telling what the legislature had in mind. So I think that that's the point. The other thing, I think this is maybe a little technical thing, but I think we need to be careful about the term reversion. The reversion would apply to the United States, but that's only because you have to approximate the remedy. Under state law, our position is under state law, a private medical negligence defendant would simply stop making periodic payments, and that's what we're trying to approximate by having a reversion. And by the way, we did mention reversion over and over and over and over again below, so we certainly didn't waive it. I mean, you can look at our yellow briefs at pages 9 to 13. We kind of talked about it ad nauseum. And let's see. So I guess that's the final point, and we would ask the court to consider going through the statute sentence by sentence and seeing what the legislature changed and then accepting our version and failing that. We don't think it's necessary, but the court obviously can certify if it feels that's necessary. Thank you, Your Honor. Thank you.